Tueley, J.
delivered the opinion of the court.
The questions in this cause for the consideration of the *304 court arise out of an agreed case, which present the follow ing facts:
On the 1st day of September, 1841, Wm. S. Whiteman was the owner and holder of a paper writing in the words following, viz:
“$920 55-100. Nashville, March 8th, 1841.
“Twelve months after date I promise to pay W. H. Hunt, or order, nine hundred and twenty dollars 55-100, for value received, payable at the Bank of Tennessee, Nashville, in current bank notes of Tennessee. P. NEGRIN.
“Endorser, W. H. Hunt.”
With the view to have this note sold in market for what it would bring, it having then something over six months to run before maturity. Whiteman placed his name on the back of said paper, as did also R. C. K. Martin and Robert H. McEwen, for his (Whiteman’s) accommodation. In this situation, about the first of September, 1841, he placed the paper in the hands of Wm. Allen, a broker, requesting him to sell it in the market. Allen did sell it about the 5th of September, 1841, to Edwin H. Childress at the rate of eighteen per cent discount, and received from said Childress for said paper, with the names so written on the back, eight hundred and fifty dollars, which he paid over immediately to said Whiteman. Nothing further was done by either party till the paper came to maturity, when it was duly protested for non-payment as a promissory note and notice in due time of non-payment given to the said Whiteman, Martin & McEwen, and all other steps taken necessary to charge said White1 man in case said paper is a promissory note.
Upon this case agreed the Circuit Judge gave judgment for the plaintiff, to reverse which this writ of error is prosecuted.
The first question for determination is whether the paper contract set forth in the case agreed is a promissory note.
Mr. Story in his Commentaries upon promissoiy notes, ch. 1, sec. 1, says, “A pronfissorymay be defined to be a written engagement by one person to pay another person therein named absolutely and unconditionally a sum of money certain at a time specified therein.” This definition of a promis *305 sory note is strictly accurate by all the authorities. The same author in the same work, chap. 1, sec. 17, says: “The instrument in order to be a valid promissory note, must be for the payment of money, and for the payment of money only, for if it be a promise to pay money and to do any other act, it is not in the sense of commercial law a promissory note, and it is not negotiable and does not enjoy the common privileges applicable to such negotiable paper. Therefore, a written promise to pay money on a particular day and to deliver up horses and a wharf has been held not a valid promissory note. So a written promise for the delivery or payment of merchandise or chatties or other things in their nature susceptible of deterioration and loss and variation in quality or value, is not a promissory note.” In sec. 18, he says, “It is upon like ground that it is held essential to a promissory note, that it should be for the payment of money in specie. Therefore, a promise to pay a certain sum of money in good East India Bonds, or in cash, or in bank of England notes, or in bank bills or notes, or in foreign bills, or in current bank notes, is not a good promissory note.”
In the case of Looney vs. Pinckston, 1st Tennessee Rep. 384, it was held that a note for money which may be discharged by the delivery of a negro, is not negotiable. In the case of Childress vs. Stewart, Peck’s Rep. 276, it was held that a note payable in bank bills is not a note for money, and therefore not negotiable. In Lawrence vs. Dougherty and Gwin, 5th Yerger, 435, it was held that a note for money which may be discharged in cotton, is not for the payment of money but property, and therefore not negotiable. In the case of Gamble vs. Hatton and Whyte, Peck’s Rep. 130, the court decided that debt will not be upon a note for six hundred and twenty-nine dollars in current bank notes, because current bank notes do not mean gold and silver, and all the plaintiff can ask in case of non-payment of the contract, would be as much gold and silver as the bank notes were worth at the time. In the case of Kirkpatrick vs. M’Culloch, 3d Humphreys, this court held that “a note payable in current bank notes is not a note for money upon which debt will lie, and is not a negotiable paper.” All the Tennessee decis *306 ions are manifestly based upon the ground that the words current bank notes do not mean money in the sense that is necessary to constitute a valid promissory note. So, to hold then that the written contract specified in the case agreed, is a promissory note, would be to overrule a long train of decisions made by. the Supreme Court of this State, which have never in the first instance been varied from, and which have now been too well established to be shaken. They support what Mr. Story lays down as we have seen as sacred law, “that to constitute a good promissory note it must be for the payment of money in specie;” that is, as we understand, not that the words in specie must be included in the note, but that it must be for the payment of money generally without limitation or restriction, which will then in legal acceptation mean gold and silver. It is supposed in argument that the cases of Crutchfield vs. Robins, Tingly & Co., 5th Humphreys, 15; Graham vs. the State, 5th Humphreys, 40, and Hopson vs. Fountain, 5th Humphreys, 140, are in conflict with this view. We do not think so. In these cases it is held that current available bank paper is money; that the word money is a generic term and embraces every description of coin or bank notes recognised by common consent as a representative of value, in effecting exchanges of property or payment of debts. But it is not held to be money in specie, which we have seen the whole current of decisions in Tennessee in conformity with Mr. Story, holds to be the only kind of money upon which a promise to pay can become a pi’omissory note. In neither of the cases did the question as to what constitutes a valid promissory note arise.
We think all the decisions of the State are in harmony upon this subject, and feel no disposition to overrule any one of them.
The •written contract then, out of which this suit arises not being a promissory note, and therefore not negotiable, a second question is presented for our consideration, and that is, whether Whiteman is liable as an endorser thereof. In the case of Looney vs. Pinckston, 1st Tennessee Rep. 384, it was held that the assignor of a paper not negotiable, is not liable unless he has been guilty of a fraud.
*307 In the case of Lawrence vs. Dougherty and Gwin, 5th Yerger, 435, it is held that the endorser and assignor of a note not negotiable, is not liable upon Ms endorsement.
In the case of Kirkpatrick vs. M’Culloch, 3 Humph., the same doctrine is recognised, and it is there said that the endorser of such paper is only liable where he expressly contracts to be so, or where he transfers such paper fraudulently, and in the latter case not upon the endorsement, but by special action for the consideration, and by the endorsee. We thus see that there have been a train of decisions'ranging from 1st Tennessee Rep. down to 3d Humphreys, in 1842, upon this subject without conflict or contradiction, sustaining the proposition that the endorser or assignor of paper not negotiable is not liable by virtue of his endorsement, but only where he specially so contracts to be, or for fraud in the transfer? To hold otherwise wouldbe to overrule these decisions which we are not disposed to do.
But is there any reason why these decisions should be overruled as being in conflict with principles adjudicated elsewhere. We think not. In discussing this branch, of the subject it must be borne in mind that the paper sued on is held not to be negotiable because it is not a promissory note, and that it is not a promissory note because it is not for the payment of money in specie, but, to use the words of Mr. Story before quoted, in something “susceptible of deterioration and loss, and variation of quality or value,” and not because of the want of negotiable words in the face of the instrument, such as order or bearer, which are necessary by the statute of Anne in England, and by the statutes copied therefrom in many of our States. To make a promissory note negotiable, no such words are required by our statute; on the contrary they are expressly dispensed with, and the paper sued on would have been a promissory note and negotiable if it had been for the payment of money in specie.
Let us now proceed and examine the principles as laid down by Mr. Story upon this subject which are supposed to conflict with our decision, to see if they do.
In section 128 of the work before referred to, Mr. Story says, “a promissory note may be non-negotiable and payable *308 to a particular person only, or they may be payable to bearer or order, and each of these cases, so far as the transfer by endorsement is concerned, may require a distinct consideration.” “When a promissory note is not negotiable, if it be endorsed by the payee, it will be binding upon him and may, as between him and his immediate endorser, possess certain rights, liabilities and obligations capable of being enforced against him; but, as between him and subsequent holders, either no liabilities and obligations at all may exist at law, or very different rights or qualified rights and liabilities and obligations only.” He proceeds to discuss the subject at length in his work, from page 133 to 136, and also at 587, the quotation of which we do not deem necessary for this case, in as much as the question of the liability of an endorser upon an unnegotiable promissory note can never arise in this State, there being no such paper recog-nised in our law, and because the quotation would necessarily swell this opinion. Let it suffice that he fully sustains the position that the endorsers of an unnegotiable promissory note are liable in certain modes for the payment, but in a very different manner from those of negotiable notes. The authorities cited by him and his comments thereon only show that the endorser of unnegotiable promissory notes are thus responsible — not the endorser of a written contract which is not a promissory note. There are no decisions to be found holding the endorsers of such last mentioned paper responsible upon their endorsement. The decisions of the Supreme Court of Tennessee which have been referred to, hold that they are not, and nothing more. They are not then, and as has been seen cannot be in conflict with decisions made upon promissory notes which are not negotiable for the want of the use of negotiable words in the body of the contract.
We are therefore of opinion that the instrument set forth in this special agreed case is not a promissory note, that it is not therefore negotiable; that the endorser is not liable upon any implied promise arising out of such endorsement; that having committed no fraud in the transfer, and not having made himself responsible by a special promise for the performance of the agreement, he is not liable to this action.
*309 We therefore reverse the judgment of the Circuit Court, and give judgment in the case agreed for the defendant.